Mike Haynes Executive Director Kansas Real Estate Appraisal Board Columbian Title Building, Suite 3114 820 S.E. Quincy Topeka, Kansas 66612-1158
Dear Mr. Haynes:
As executive director for the Kansas real estate appraisal board, you pose two related questions which pertain to licensed or certified county appraisers. You explain that the board has recently received various complaints with regard to written mass appraisal reports developed by a county or district appraiser's office and that each complaint appears to specifically address components of the mass appraisal methodology which could be flawed or deficient in arriving at a final estimate of value. The term "mass appraisal" has been defined as "the process of valuing a universe of properties as of a given date utilizing standard methodology, employing common data, and allowing for statistical testing." Uniform Standards of Professional Appraisal Practice (USPAP), 1996 Edition. It is our understanding that mass appraisals are used primarily for purposes of ad valorem taxation. In relation to these complaints you ask:
 "1) Would the licensed or certified county appraiser be the respondent in a complaint in regards to any or all of the parcels of land and improvements in the county if the counties staff appraisers who developed and reported the appraisal were not licensed or certified?
 "2) Who would be the respondent in a complaint when the contribution on the development and reporting of the written mass appraisal report for a specific parcel of property was performed by one or more unlicensed appraisers, as well as one or more licensed and/or certified appraisers?"
 County and District Appraisers
In 1992 the legislature passed L. 1992, ch. 282, § 1, amending K.S.A. 19-430, to require that persons newly appointed to the office of county appraiser be certified or licensed pursuant to the real estate appraisers act, K.S.A. 58-4101 et seq. In 1994 this statute was further amended to require a newly appointed county or district appraiser to be a state licensed real property appraiser, a certified general real property appraiser or a certified residential real property appraiser, except that after July 1, 1997 a newly appointed county or district appraiser is required to be a certified general real property appraiser. L. 1994, ch. 242, § 2. Prior to those changes, in order to serve as a county appraiser a person was only required to have "one year of appraisal experience" and to "be qualified by the director of property valuation as an eligible Kansas appraiser." K.S.A. 1991 Supp. 19-430.
The purpose of the 1992 amendment to K.S.A. 19-430 was "to assure that county and district appraisers had the requisite experience and qualifications to assume the office of county or district appraiser." Testimony by David C. Cunningham, director of property valuation, presented February 23, 1994 before the senate committee on government organization.
Other legislative changes enacted in 1992 to improve the quality of appraisals included a directive that the director of property valuation establish standards for the performance of appraisals in connection with ad valorem taxation which at a minimum require:
 "(1) That all appraisals be performed in accordance with generally accepted appraisal standards as evidenced by the appraisal standards promulgated by the appraisal standards board of the appraisal foundation which are in effect March 1, 1992; and
 (2) that such appraisals shall be written appraisals." L. 1992, ch. 249, § 1, now K.S.A. 1995 Supp. 79-505.
In addition, the 1992 legislature deemed appraisals produced by the computer assisted mass appraisal system (CAMA) to be written appraisals for purposes of the rules for valuing property act. L. 1992, ch. 249, § 3, now K.S.A. 1995 Supp. 79-504.
To implement the legislative mandate, the director of property valuation issued a directive to county appraisers which stated:
 "The county appraiser shall perform all appraisal functions in conformity with the Uniform Standards of Professional Appraisal Practice, Standards 2 and 6, as required by L. 1992, ch. 249, sec. 1. The Uniform Standards of Professional Appraisal Practice are hereby incorporated as though fully set forth herein." (Director of Property Valuation Directive #92-006, approved November 30, 1992.)
More recently, in a May 23, 1996 letter to the Douglas county appraiser, the director of property valuation clarified the division's intent in relation to Directive #92-006:
 "USPAP Standard 6 covers mass appraisals. Generally speaking, this is the standard that the county appraiser is required to adhere to in doing appraisals for ad valorem taxation purposes. USPAP Standard 2, however, covers single property appraisals.' Single property appraisals' include those appraisals used to value special purpose properties that do not lend themselves to mass appraisal techniques.
 "USPSP Standard 6 also applies to those properties that have been initially valued through mass appraisal techniques, but whose values have been re-examined as a result of the hearing and appeals process.
 "It has never been the Division's intention to require the county appraiser to meet both USPAP Standard 2 and 6 on each and every appraisal conducted for ad valorem tax purposes. Either USPAP Standard 6 is applicable (mass appraisals), or USPAP Standard 2 is applicable (single property appraisals), but not both."
A county or district appraiser has the duty of appraising all real property in accordance with the policies, procedures and guidelines of the director of property valuation. K.S.A. 1995 Supp. 79-1411b; K.S.A.79-1455; 79-1456. With the consent of the board of county commissioners a county or district appraiser may appoint township trustees, assistants, appraisers or other specialized employees as may be required to carry out this task.
K.S.A. 19-425; K.S.A. 1995 Supp. 79-1411b; K.S.A. 79-1455. Further, the county or district appraiser has the responsibility of supervising the appraisal of all real estate in the county subject to taxation as well as supervising any persons so appointed in the performance of their duties. K.S.A. 79-1412a.
 The Real Estate Appraisal Board
Once a person is licensed or certified under the real estate appraisers act, the Kansas real estate appraisal board is authorized to investigate actions of such appraiser and if warranted to "revoke or suspend the certificate or license of the appraiser, or censure the appraiser" and/or assess a civil fine for a number of specified acts or omissions. K.S.A.
58-4118(a). These acts and omissions include:
 "(6) violation of any of the standards for the development or communication of real estate appraisals as provided in this act;
 "(7) failure or refusal without good cause to exercise reasonable diligence in developing an appraisal, preparing an appraisal report or communicating an appraisal;
 "(8) negligence or incompetence in developing an appraisal, preparing an appraisal report or communicating an appraisal;
 "(9) willfully disregarding or violating any provision of this act or rules and regulations of the board for the administration and enforcement of the provisions of this act."
The standards for the development or communication of real estate appraisals referenced in subsection (a)(6) of K.S.A. 58-4118 are those promulgated pursuant to title XI of the financial institutions reform, recovery and enforcement act of 1989 (12 U.S.C. § 3331 et seq.), any other federal law, and any regulations adopted pursuant thereto. K.S.A.58-4121; 58-4102(d). Specifically 12 C.F.R. § 34.44 (within the real estate lending and appraisals code) establishes minimum appraisal standards, including conformity to USPAP. Additionally, in relation to subsection (a)(9) of K.S.A. 58-4118, USPAP has been adopted by reference in K.A.R. 117-8-1.
 The Uniform Standards of Professional Appraisal Practice (USPAP) "The Appraisal Standards Board (ASB) of The Appraisal Foundation develops, publishes, interprets and amends the uniform standards of professional appraisal practice (USPAP) on behalf of appraisers and users of appraisal services.
 "These standards are based on the original Uniform Standards of Professional Appraisal Practice developed in 1986-87 by the Ad Hoc Committee on Uniform Standards and copyrighted in 1987 by The Appraisal Foundation. Prior to the establishment of the ASB in 1989, USPAP had been adopted by major appraisal organizations in North America and became recognized as the generally accepted standards of appraisal practice." Uniform Standards of Professional Appraisal Practice, 1996 Edition, Forward.
The 1996 edition of USPAP consists of ten standards which pertain to various types of appraisals and appraisal reports, eight statements on appraisal standards, and fifteen advisory opinions.
Standard 6 which pertains to "Mass. Appraisal and Reporting" establishes the appropriate approach in developing a mass appraisal by requiring an appraiser to "be aware of, understand, and correctly employ those generally accepted methods and techniques necessary to produce and communicate credible appraisals." This standard is accompanied by eight detailed rules of appraisal practice which are specifically applicable to mass appraisals. According to its prefatory comment:
 "Standard 6 is directed toward the substantive aspects of developing and communicating competent analyses, opinions, and conclusions in the appraisal of a universe of properties. Mass. appraisals are used primarily for purposes of ad valorem taxation. . . ."
This prefatory comment further recognizes that:
 "Mass. appraisals may be prepared with or without computer assistance and frequently are developed by teams of people. The validity of mass appraisal conclusions is frequently tested or contested by single-property appraisals. Single-property appraisals should conform to Standards 1 and 2 for real property."
 Additionally, the comment to Standards Rule 6-1 acknowledges that a mass appraisal uses a "division of tasks."
 Standard 1 and its five accompanying rules are directed toward the substantive aspects of developing a competent single real property appraisal. Standard 2 and the accompanying five rules govern the form and content of a report that communicates the result of such an appraisal. As mentioned, according to the director of property valuation Standard 2 (and presumably Standard 1) would be followed by a county or district appraiser to "value special purpose properties that do not lend themselves to mass appraisal techniques." Standards Rule 2-5 directly addresses the issue of the responsibility of an appraiser who signs a real property appraisal report prepared by another in any capacity. Such an appraiser "accepts full responsibility for the appraisal and the contents of the appraisal report."
The comment to that rule elucidates further:
 "This requirement is directed to an appraiser acting as an employer or supervisor signing a report of an employee or subcontractor. The employer or supervisor signing the report is as responsible as the individual preparing the appraisal for the content and conclusions of the appraisal and the report.
 Using a conditional label next to the signature of the employer or supervisor does not exempt that individual from adherence to these standards."
 Jurisdiction of Real Estate Appraisal Board
The legal duty and responsibility for ad valorem taxation appraisals falls squarely on the shoulders of county and districts appraisers. K.S.A. 1995 Supp. 79-1411b; K.S.A. 79-1455; K.S.A. 79-1456. By virtue of K.S.A. 1995 Supp. 79-505 and Directive #92-006, all county and district appraisers are required to develop mass appraisals in conformity with the applicable provisions of USPAP Standard 6. Those county and district appraisers who are licensed or certified by the board are additionally under the same requirement by virtue of K.S.A. 58-4119(a)(6), K.S.A.58-4119(a)(9) and K.A.R. 117-8-1. Standards Rule 6-1 establishes a duty not to commit a substantial error of omission or commission that significantly affects a mass appraisal and a duty not to render a mass appraisal in a careless or negligent manner. Further, pursuant to the ethics provision of USPAP, an appraiser is required to avoid any action that could be considered misleading or fraudulent. In addition, a licensed or certified appraiser is under a statutory duty of competence and the duty to exercise reasonable diligence in the development and preparation of an appraisal and its subsequent report. K.S.A.58-4119(a)(7); K.S.A. 58-4119(a)(8). These duties encompass supervisory responsibility for any appraisal developed and reported, in whole or in part, by those persons employed to participate in the appraisal process. K.S.A. 79-1412a. A breach of any of these duties or responsibilities by a county or district appraiser who is licensed or certified by the board places such appraiser at risk of disciplinary action.
Further, pursuant to Standards Rule 2-5 a licensed or certified county or district appraiser is responsible for appraisal work performed by any person he employs or supervises in relation to the valuation of any "special purpose properties that do not lend themselves to mass appraisal techniques." This specific responsibility translates into potential disciplinary action against a county or district appraiser who is licensed or certified by the board if the employee or supervisee violates USPAP Standards 1 or 2 or any accompanying standards rules. K.S.A.58-4118(a)(6).
Thus, we are led to the conclusion that a licensed or certified county or district appraiser would be the appropriate respondent in a complaint filed with the board which alleges errors, omissions, carelessness, negligence or lack or reasonable diligence in the development and/or report of a mass appraisal property, even when such was performed, in whole or in part, by an unlicensed or uncertified person working under the supervision of the licensed or certified county or district appraiser. In addition, any other licensed or certified appraiser who participated in the appraisal development and/or report complained about should be named as a respondent as well.
One final word: Mere dissatisfaction by a taxpayer with the value assessed by a county or district appraiser's office does not provide a legally sufficient basis for board investigation or initiation of a disciplinary proceeding against a licensed county or district appraiser. For the board to assume jurisdiction, a complaint filed with the board must factually allege on its face that the assessed value resulted from errors, omissions, carelessness, negligence or lack of reasonable diligence in the development and/or report of a mass appraisal property.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm